UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

STARR SURPLUS LINES                                    CIVIL ACTION
INSURANCE COMPANY

V.                                                     NO. 18-5635

BANNER PROPERTY MANAGEMENT
COMPANY; MARC B. BANNER;                               SECTION "F"
and ROBERT J. ROTH


ORDER AND REASONS

Before the Court is Starr Surplus Lines Insurance Company's motion for summary judgment that it has no duty to defend or indemnify Banner Property Management, Inc. or Marc C. Banner for the claims asserted by Robert J. Roth. For the reasons that follow, the motion is DENIED.

**Background**

This declaratory judgment action regarding the scope of insurance defense and indemnity obligations arises out alleged defects in the construction of residential property.

On June 26, 2013, Robert J. Roth entered into a contract with Banner Property Management, Inc. ("BPMI") for the construction of a home on a lot owned by Roth and located at 6851 General Haig Street in New Orleans, Louisiana. Pursuant to the contract, Roth agreed to pay $367,074.97 for the construction in bi-weekly installments, with the balance due upon the project's completion. Serving as the general contractor, BPMI performed all work

1

associated with building the home, either directly or through one of its subcontractors, aside from the installation of sprayfoam insulation underneath the floors. Although Roth purchased some of the appliances and fixtures for the home, BPMI installed them. During the construction process, BPMI obtained a Commercial General Liability Insurance Policy from Starr Surplus Lines Insurance Company ("Starr"), effective from April 9, 2014 through April 9, 2015.[1]

The New Orleans Department of Safety and Permits issued a Certificate of Occupancy on August 1, 2014. The following year, on August 3, 2015, Roth sued BPMI and Marc C. Banner, the company's manager, in the Civil District Court for the Parish of Orleans, asserting that the defendants: (1) violated the New Home Warranty Act, La. R.S. §§ 9:3143-3150; (2) breached the construction contract by failing to perform services in a workmanlike manner and/or by providing and utilizing defective materials; and (3) were negligent in supplying, installing, selling, or otherwise being responsible for the installation of defective materials in the home. After an exception of no cause of action was asserted, Roth filed an amended petition, alleging the following seventy-eight (78) specific physical defects and damages:

---

[1] The Policy contains a $1,000,000 per occurrence limit of liability; a $1,000,000 personal and advertising injury limit of liability; a $2,000,000 general aggregate limit of liability; and a $2,000,000 products-completed operations limit of liability.

(1) Discoloration on the brick exterior of the house;
(2) Severe cupping of the wood flooring;
(3) Duct leak in the attic of the house;
(4) Poor quality and construction of the ceramic tile work located in the bathroom;
(5) Inadequate fastening of fixtures and hardware in the bathroom located in the front of the house;
(6) Defective wiring of ground fault interrupters which prevents the interrupters from tripping when tested;
(7) Failure to install proper mounting screws for the electrical panel cover;
(8) Damaged sheetrock behind the electrical panel cover;
(9) Ceiling fan not properly mounted to the correct height;
(10) Discoloration exterior window caulking;
(11) Incorrect installation of exterior window caulking;
(12) Mold forming on the exterior window caulking;
(13) Damaged or defective marble floor tiles located in the master bathroom;
(14) Improper caulking and sealing of the backsplash located in the bathroom;
(15) Discoloration and damage to the marble sink located in the master bathroom as a result of the improper sealing of the marble;
(16) Improper mounting and the light and vent system located in the master bathroom;
(17) Excess grout used in the finishing the drain of the shower located in the master bathroom;
(18) Improper installation and plumbing to the master bathroom shower heads resulting in limited water flow;
(19) Discoloration and damage to the master bathroom sink as a result of water leakage;
(20) Failure to install shelves in the cabinets of the master bathroom;
(21) Improper caulking of the bathtub located in the front bathroom on the left side of the house;
(22) Poor craftsmanship of the ceramic wall tiles in the left front bathroom;
(23) Poor workmanship of the connection between the vent and the trim located at the cooktop exhaust vent in the kitchen;
(24) The metal front of the coolant exhaust vent is bent and crimped;
(25) Improper installation of the pantry pocket door;
(26) Improper installation of several electrical switches and junction box covers throughout the house;
(27) Improper installation of the kitchen faucet;

3

(28) Poor craftsmanship of the kitchen countertop indicated by a poor joint cut in the countertop;
(29) Improper mounting of numerous electrical outlets;
(30) Improper installation of the kitchen countertops;
(31) Separation of the wooden baseboards and the interior walls;
(32) Improper excess drying leading to visible joints in the crown molding in the interior of the house;
(33) Improperly finished intersections between interior walls and wooden beams leading to visible gaps;
(34) Improper over-sanding of wooden bar;
(35) Improper installation of the HVAC system in the attic leading to sheetrock material coming loose due to excessive vibration;
(36) Improper finishing of the interior paint;
(37) Mismatched textures used in completing the sheetrock ceiling of the den;
(38) Splitting and separating of cypress wood beams located in the house due to excess drying;
(39) Inconsistent paint textures used when touch ups were performed;
(40) Premature rusting and deterioration of the metal rails located on the exterior of the house;
(41) Water leakage of the bathroom sink located in the rear of the house;
(42) Damage to cabinets and flooring of the rear bathroom due to water leakage;
(43) Improper installation and plumbing of toilet in the rear bathroom, causing the toilet to run constantly;
(44) Improper finishing and caulking of the exterior cement siding;
(45) Damage to the concrete located in the screened porch area due to construction personnel tracking dirt and sand across the slab for an extended period of time;
(46) Inadequate pouring of the garage slab leading to standing water forming due to inadequate slope;
(47) Improper mounting of the left rear wooden fence gate;
(48) Improper installation of the metal fence posts surrounding the exterior of the home;
(49) Improper installation of the exterior electrical meter panel;
(50) Improper sealing of the electrical conduit;
(51) Improper installation of crawlspace ventilation holes on the exterior of the house;
(52) Improper installation and/or wiring of exterior light fixtures;

(53) Improper mounting of the fold down stairs located in the garage;
(54) Improper wiring located in the roof framing system;
(55) Improper installation of attic ventilation system;
(56) Improper installation of subsurface drain system in the backyard of the house;
(57) Improper construction and installation of exterior brick siding;
(58) Failure to paint plumbing vents;
(59) Improper installation of the attic stairs located inside the house;
(60) Improper insulation used in the attic of the house;
(61) Improper installation of ventilation system of the attic located in the house;
(62) Improper installation and damage to the air ducts located in the attic;
(63) Improper installation of attic exhaust vent, causing a fire hazard;
(64) Failure to install junction box cover in the attic;
(65) Improper window framing in front of the attic;
(66) Improper finishing to the bricks at the front door threshold;
(67) Discoloration of brick siding throughout the exterior of house;
(68) Cracks in the brick siding on the left side of the house;
(69) Debris and trash left on front property by contractor personnel;
(70) Improper mounting of the left side crawlspace access hatch;
(71) Failure to secure plumbing lines to the floor framing;
(72) Cracking in the brickwork on the right side of the front parapet wall located on front exterior of the house;
(73) Improper installation of wooden decking located on front exterior of the house;
(74) Cracked bricks at the side off front steps of the house;
(75) Damage to the vinyl overhang materials on the exterior of the house;
(76) Damage and improper installation of the fascia located on the left side of garage;
(77) Improper installation and finishing of the concrete finishing on the left side of the screened porch area; and

(78) Improper installation of the heating, light and ventilation fixtures in three of the four bedrooms in the house, causing the fixtures to not draw any air.

Roth further alleges that, as a result of the defective workmanship and/or installation of defective materials, he has sustained and/or will sustain the following damages:

(1) Diminution in value of the Property;
(2) Costs to repair defective conditions in the Property;
(3) Loss of use of the Property;
(4) Mental Anguish, past and future;
(5) Attorney's fees and costs; and
(6) Such other damages as may be proven at trial.

Upon being sued, BPMI tendered the lawsuit to Starr for defense and indemnity. Thereafter, on June 4, 2018, Starr filed a complaint for declaratory judgment in this Court against Roth, BPMI, and Banner to ascertain the scope of its defense and indemnity obligations for Roth's claims under the Starr Policy. Specifically, Starr seeks a judicial declaration that: (1) exclusions in the CGL Policy bar coverage for Roth's claims against BPMI and Banner; (2) Starr has no duty to defend BPMI and Banner against the claims asserted by Roth; and (3) Starr has no duty to indemnify BPMI and Banner for Roth's claims. Starr now moves for summary judgment, contending that the "work product" exclusions in the Starr CGL Policy bar coverage for Roth's claims, such that Starr has no duty to defend or indemnify BPMI and Banner.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a

7

scintilla of evidence." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007) (internal quotation marks and citation omitted). Ultimately, "[i]f the evidence is merely colorable . . . or is not significantly probative," summary judgment is appropriate. Anderson, 477 U.S. at 249 (citations omitted); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) ("Unauthenticated documents are improper as summary judgment evidence.").

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013) (internal quotation marks and citation omitted).

## II.

### *A.*

The Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate

> pleading may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). The parties do not dispute that the construction defect lawsuit pending in state court, which BPMI tendered to Starr for defense and indemnity, gives rise to an "actual controversy" within this Court's jurisdiction. Accordingly, the Court proceeds to the merits of Starr's motion.

*B.*

Louisiana law declares that an insurance policy is like any other contract and should be construed according to the general rules of contract interpretation set forth in the Civil Code. See Cadwallader v. Allstate Ins. Co., 848 So. 2d 577, 580 (La. 2003). The Court's role in interpreting contracts is to determine the common intent of the parties. La. Civ. Code art. 2045. In doing so, Civil Code article 2047 requires that words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. See Henry v. South Louisiana Sugars Cooperative, 957 So.2d 1275, 1277 (La. 2007) (citing Cadwallader, 848 So. 2d at 580). "When the words of a contract are clear and explicit and lead to no absurd consequences," Civil Code article 2046 declares, "no further interpretation may be made in search of

9

the parties' intent," and the agreement must be enforced as written. Hebert v. Webre, 982 So. 2d 770, 773-74 (La. 2008). However, "[i]f an ambiguity remains after applying the general rules of contractual interpretation, the ambiguous policy provision is construed against the insurer who furnished the policy and in favor of the insured." Mossy Motors, Inc. v. Cameras Am., 898 So. 2d 602, 606 (La. App. 4 Cir. 2005)).

*C.*

An insurer's duty to defend and duty to indemnify are separate and distinct obligations. Martco Ltd. P'ship v. Wellons, Inc., 588 F.3d 864, 872 (5th Cir. 2009) (citing Elliott v. Cont'l Cas. Co., 949 So. 2d 1247, 1250 (La. 2007)). Louisiana jurisprudence instructs that "[a] duty to defend will exist unless the allegations are such that every claim pleaded in the complaint (and otherwise falling within the insuring clause) unambiguously falls within an exclusion." Id. at 874. Moreover, in evaluating the duty to defend, the Court is constrained to "the plaintiff's pleadings and the face of the policy, without consideration of extraneous evidence." Louisiana Stadium & Exposition Dist. v. BFS Diversified Prod., LLC, 49 So. 3d 49, 51 (La. App. 4 Cir. 2010) (quoting Bryant v. Motwani, 683 So. 2d 880, 884 (La. App. 4 Cir. 1996)). On the other hand, in examining the duty to indemnify, the Court is not limited to the allegations in the complaint. Martco, 588 F.3d at 877. Indeed, the Court "must apply the Policy

10

to the actual evidence adduced at the underlying liability trial together with any evidence introduced in the coverage case." Id. Accordingly, "Louisiana law generally provides that until the underlying issue of liability is resolved and the defendant is cast in judgment, the issue of indemnity is premature and non-justiciable." New England Ins. Co. v. Barnett, 465 F. App'x 302, 308 (5th Cir. 2012) (citing Mossy Motors, Inc., 898 So. 2d 602, 607 (La. App. 4 Cir. 2005)). Nonetheless, "a reviewing court may decide the insurer's duty to indemnify before the conclusion of the underlying litigation if 'the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.'" LCS Corr. Servs., Inc. v. Lexington Ins. Co., 800 F.3d 664, 669 (5th Cir. 2015) (quoting Farmers Tex. Cty. Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 84 (Tex. 1997)).

### III.

Starr contends that it has no duty to defend or indemnify BPMI and Banner because the "work product" exclusions in the CGL Policy bar coverage for the claims asserted by Roth. BPMI counters that these exclusions do not bar coverage for *all* of Roth's claims or, in the alternative, that the mental anguish damages Roth alleges trigger the "bodily injury" aspect of the insuring agreement.

*A.*

Starr's CGL Policy describes coverage for bodily injury and property damage liability as follows:

> **1. Insuring Agreement**
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

This basic statement of coverage is qualified by several limitations and exclusions. First, the insurance only applies if: (1) the bodily injury or property damage "is caused by an 'occurrence' that takes place in the 'coverage territory,'" and (2) the bodily injury or property damage "occurs during the policy period."[2] Second, the "exclusions" section describes various circumstances under which the insurance does not apply. Relevant

---

[2] It is undisputed that BPMI's potential liability to Roth arises out of an "occurrence" within the "coverage territory." Indeed, Louisiana jurisprudence "considers defects in construction that result in damage subsequent to completion to be 'accidents' and 'occurrences' when they manifest themselves." See Rando v. Top Notch Props., L.L.C., 879 So. 2d 821, 833 (La. App. 4 Cir. 2004). And Roth alleges that the damage was sustained within the United States.
    Although Roth's petition does not specify dates in which the alleged bodily injury or property damage occurred, it can be inferred that such injury and damage occurred during the policy period – that is, between April 9, 2014 and April 9, 2015. According to Roth's petition, the New Orleans Department of Safety and Permits issued a Certificate of Occupancy on August 1, 2014, after which Roth discovered the defendants' faulty workmanship and afforded them an opportunity to remedy the defects.

12

to this claim include the "Damage to Property," "Damage to Your Product," and "Damage to Your Work" exclusions, which provide as follows:

> This insurance does not apply to:
>
> . . .
>
> **j. Damage To Property**
> "Property damage" to:
>
> . . .
>
> **(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it . . . . Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."
>
> **k. Damage To Your Product**
> "Property damage" to "your product" arising out of it or any part of it.
>
> **l. Damage To Your Work**
> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard." This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

The policy goes on to define "products-completed operations hazard," "property damage," "your product," and "your work" as follows:

> **16.** "Products-completed operations hazard:"
> **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
> **(1)** Products that are still in your

physical possession; or
 **(2)** Work that has not yet been
 Completed or abandoned . . . .

**17.** "Property damage" means:
**a.** Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
**b.** Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**21.** "Your product:"
 **a.** Means:
  **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
   **(a)** You;
   **(b)** Others trading under your name; or
   **(c)** A person or organization whose business or assets you have acquired; and
  **(2)** Contains (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**22.** "Your work:"
 **a.** Means:
**(1)** Work or operations performed by you or on your behalf; and
**(2)** Materials, parts or equipment furnished in connection with such work or operations.

*B.*

Starr contends that coverage for all of Roth's alleged property damage is unambiguously excluded by the "Damage to

14

Property," "Damage to Your Product," and "Damage to Your Work" exclusions. To support this position, Starr points to Louisiana jurisprudence interpreting these provisions.

First, in <u>Supreme Services and Specialty Co. v. Sonny Greer, Inc.</u>, the Louisiana Supreme Court determined that a CGL policy with exclusions nearly identical to those presented in this case barred coverage for claims related to the construction of a faulty concrete slab. 958 So. 2d 634, 639-41, 645 (La. 2007). Relying upon the "Damage to Property" exclusion, the court found there was no coverage for damage to the concrete slab that had to be "restored, repaired, or replaced because of the defective work or the defective product of [the general contractor] and its subcontractors." <u>Id.</u> at 645. The court further noted that, because there was "no other product damaged or third person injured," the claim was not saved by the products-completed operation hazard. <u>Id.</u>

Similarly, in <u>Provost v. Homes by Lawrence & Pauline, Inc.</u>, the Louisiana Third Circuit Court of Appeals held that the "Damage to Your Product" and "Damage to Your Work" exclusions, jointly referred to as the "work product" exclusion, barred coverage for all design defect and poor workmanship claims asserted by homeowners against their contractor in an action brought under the New Home Warranty Act. 103 So. 3d 1280 (La. App. 3 Cir. 2012). The Third Circuit reasoned that the products-completed operations

15

hazard did not apply to any of the homeowners' claims for damages "because their claims [we]re for [the contractor's] product itself." Id. at 1285.

Most recently, in considering a fact pattern nearly identical to the one at issue here, another Section of this Court, in Atain Specialty Insurance Co. v. VIG II, LLC, determined that the "Damage to Your Product" exclusion barred coverage for all claims asserted by homeowners against their general contractor because "[e]very claimed defect and damage in [their] petition concern[ed] the house itself." No. 15-6499, 2017 WL 3867672, at *7 (E.D. La. Feb. 9, 2017) (Vance, J.). Relying upon the reasoning of Sonny Greer and Provost, the Atain Court reasoned: "Because the Zoglios' home is VIG II's product, and the complaint evinces no claims for damage to anything other than the house itself, the Damage to Your Product exclusion unambiguously precludes coverage for the Zoglios' claims." Id. at *8. Accordingly, the Court held that the insurer had no duty to defend the general contractor or indemnify it for any resulting liability. Id.

In this case, Roth alleges in his petition that BPMI and Banner failed to perform their services in a workmanlike manner and/or used defective materials in building his home. Moreover, in his First and Supplemental Amending Petition, Roth asserts seventy-eight separate physical defects and damages, all of which indisputably stem from, and affect, his home. The parties further

16

appear to agree that BPMI and its subcontractors constructed Roth's home, such that the entire home is BPMI's "product." Accordingly, Starr contends that, under <u>Sonny Greer</u>, <u>Provost</u>, and <u>Atain</u>, all of Roth's claims are barred by the "Damage to Property," "Damage to Your Product," and/or "Damage to Your Work" exclusions.

BPMI counters that the duty to defend has been triggered because not *all* of Roth's property damage allegations fall within the Policy's exclusions. BPMI concedes that, to the extent Roth has alleged faulty work, there is no coverage under the Policy for the cost of repair or replacement. However, BPMI correctly notes that the Louisiana Supreme Court, in <u>Sonny Greer</u>, explicitly recognized that CGL policies provide coverage for property damage that arises out of faulty work. Specifically, the <u>Sonny Greer</u> court used the example of faulty wiring, which resulted in subsequent fire damage, to illustrate the distinction between the "work product" exclusion and products completed operations coverage:

> Under the PCOH provision, damages, other than the faulty product or work itself, arising out of the faulty workmanship are covered by the policy. Stated differently, if a subcontractor's faulty electrical work caused the building to burn down before completion, the "work product" exclusion would eliminate coverage for the faulty electrical work performed by the contractor or subcontractor. However, the operations hazard coverage applies not to the faulty work, but damages arising out of the faulty work. Damage to real property arising out of the faulty work

17

> (fire damage) would not be excluded as it would be covered under the PCOH provision.

Sonny Greer, 958 So. 2d at 645. In addition, BPMI invokes <u>Iberia Parish School Board v. Sandifer & Son Constructions Co., Inc.</u>, in which the Louisiana Third Circuit Court of Appeals, at the summary judgment stage, determined that neither the "Damage to Your Product" nor "Damage to Your Work" exclusions applied to damages to a building caused by water leaks arising out of defective roof installation performed by a subcontractor. 721 So. 2d 1021, 1021-22, (La. App. 3 Cir. 1998). According to BPMI, <u>Sonny Greer</u> and <u>Iberia Parish</u> stand for the proposition that a complaint of faulty work is not covered under a CGL policy, but a complaint of additional damage resulting from faulty work is covered under the products completed operations hazard.

Therefore, BPMI contends, because Roth has alleged that water leakage has caused "damage to cabinets and flooring of the rear bathroom," he has claimed that distinct property damage resulted from the faulty work. BPMI notes that the same is true with respect to Roth's complaint that "improper installation of the HVAC system in the attic" has resulted in "sheetrock material coming loose due to excessive vibration."

In response, Starr urges this Court not to deviate from its own ruling in <u>Atain</u> or from the Louisiana Supreme Court's ruling in <u>Sonny Greer</u>. But, the Court agrees with BPMI, and finds that

18

Starr has not carried its burden of proving that coverage is unambiguously excluded for *all* of Roth's asserted claims. First, this Court, sitting in diversity, must interpret Louisiana law as would the Louisiana Supreme Court if faced with the same issue -- not as would another Section of this Court. See In re Chinese Manufactured Drywall Prods. Liab. Litig., 759 F. Supp. 2d 822, 847 (Fallon, J.) ("[B]ecause the cases at issue are before the Court on diversity, the Court sits as an Erie court and must apply Louisiana law . . . . To determine a state law question, [the court] first look[s] to decisions of the Louisiana Supreme Court.") (internal citations omitted). Second, the Court finds that Provost did not go so far as to hold that, where the insured is the general contractor of a home, any damage to the entire home falls within the "your work" and/or "your product" exclusions. Importantly, Provost did not involve express allegations of distinct property damage separate and apart from faulty work itself, as here. See generally Provost, 103 So. 3d 1280. Finally, the Court notes that Starr's reliance on the **facts** of Sonny Greer is misplaced. Because Sonny Greer concerned defective concrete installation that resulted in cracks to a slab, all of the damage there, unlike here, necessitated the repair or replacement of a contractor's faulty product or work. See Sonny Greer, 958 So. 2d at 645. Ultimately, because Starr has not satisfied its burden of establishing that every claim pleaded in Roth's petition unambiguously falls within

19

an exclusion, summary judgment in its favor is inappropriate as to both the duty to defend and the duty to indemnify.[3]  See Martco Ltd. P'ship, 588 F.3d at 874; New England Ins. Co., 465 F. App'x at 308.  Accordingly, for the foregoing reasons, IT IS ORDERED: that Starr's motion for summary judgment is hereby DENIED.

                        New Orleans, Louisiana, December 10, 2018

                        _____
                              MARTIN L. C. FELDMAN
                            UNITED STATES DISTRICT JUDGE

---

[3] Having determined that coverage is not unambiguously barred under the "work product" exclusions, the Court need not reach BPMI's alternative ground for opposing Starr's motion – that is, the possibility of coverage under the "bodily injury" portion of the insuring agreement.